WATKINS, Judge.
Bickham Petroleum Corporation, appellant, brought the present action against Continental Oil Company (Conoco), appel-lee, to recover for alleged shortages in deliveries of gasoline by Conoco to Bick-ham, a jobber, between January 1, 1978 and January 31, 1979. However, the attempt to establish the alleged shortages was made solely through a comparison, by introduction of evidence, of the bills of lading made by Conoco and the sales slips made by Bickham as jobber in selling the gasoline (some of which, incidentally, was sold to the general public). However, some of the sales slips were missing, and the attempt made by Mrs. Elizabeth Bickham Ott, appellant’s bookkeeper, to explain the failure to produce all the sales slips was obviously without merit. She claimed sales slips for items other than gasoline were withheld deliberately from evidence, but yet over 500 slips reflecting sales other than for gasoline were introduced in evidence. The evidence showed that Bick-ham’s bookkeeping was not in accord with generally accepted accounting practices and apparently was very substandard. As a result, Bickham failed to establish that there was a shortage by a preponderance of the evidence. The trial court so found, assigning written reasons for judgment which we annex hereto, and we cannot say the finding of the trial court was clearly wrong or manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*352 The appellee, Conoco, answered the appeal seeking damages for a frivolous appeal. However, in view of the extreme length and complexity of the record, we cannot say the appeal was frivolous. Capital Bank and Trust Co. v. Lacey, 411 So.2d 562 (La.App. 1st Cir.1982).
The judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.
APPENDIX
BICKHAM PETROLEUM CORP.
vs
CONTINENTAL OIL COMPANY
PILED: _
NUMBER: 46,851
22ND JUDICIAL DISTRICT COURT
PARISH OF WASHINGTON
STATE OF LOUISIANA
DEPUTY CLERK
REASONS FOR JUDGMENT
Petitioner seeks to recover from defendant the price of petroleum products purchased by petitioner and allegedly not delivered by defendant. Petitioner operates a petroleum bulk plant in Franklinton, Louisiana and had a jobber’s franchise agreement with defendant for the delivery of petroleum products. Under this agreement, petitioner purchased regular, unleaded and premium gasoline and diesel fuel from defendant.
Prior to May, 1978, defendant delivered all the unleaded gas to petitioner while petitioner’s own trucks would transport the other fuel purchased by petitioner from the refinery.
Shortly before May, 1978, petitioner entered into an agreement with representatives from defendant whereby all of the petroleum products would be brought to petitioner in defendant’s transports under a “key-stop” arrangement. The first delivery of petroleum products under this agreement occurred in May, 1978 with the last delivery made sometime in February, 1979.
Under this key-stop agreement, defendant’s transports would deliver gas to petitioner at night. Defendant’s transport driver would pick up a meter ticket, often referred to as a bill of lading or GOSI, from the terminal where he originally got the petroleum product. After the driver dropped this product in petitioner’s tanks, a copy of this GOSI would be left for petitioner. In order to insure that defendant’s transport driver did not overflow petitioner’s tanks, it was the procedure for defendant’s drivers to measure petitioner’s tank before the petroleum was dropped with a stick in order to verify that there was enough room in the tank to accommodate that particular petroleum drop. This measuring process was not for control, but rather merely to insure that petitioner’s tanks were not overflowed by the petroleum drop.
Petitioner took an inventory of its stock in early January of 1979 and thought there was a 400-gallon shortage. Upon investigation in February, 1979, a representative of defendant discovered the shortage herein sued for.
In defense of this action, defendant filed an exception of no cause of action, alleging ex-delecto prescription of one year and an exception of prescription of one year based in contract. Defendant also claims petitioner has not satisfied the burden of proof imposed on it to recover on this claim. For purposes of this opinion, the exceptions of no cause of action and prescription are pretermitted.
The burden is on petitioner to establish its case by a preponderance of the evidence. A preponderance of evidence exists when the proof taken as a whole shows that the fact sought to be proved is more *353 probable than not. Petitioner used circumstantial evidence at the trial of this matter to prove its case. Since petitioner based its case on circumstantial evidence, in order to carry the burden of proof, the circumstantial evidence must lead to the exclusion of other reasonable hypotheses with a fair amount of certainty. Maryland Casualty Company v. Trahan, 384 So.2d 819 (La.App. 4th Cir., 1980).
Walter Adams, a certified public accountant, after viewing petitioner’s sales journal, sales tickets and bills of lading or GOSI, testified that there was a shortage of 100,-104 gallons of petroleum products from June 1, 1978 through January 31, 1979. Calvin Brasfield, an accountant employee of Conoco, after examining petitioner’s sales tickets and the bills of lading or GOSI, determined there was a shortage of 102,015 gallons of petroleum products. Mr. Brasfield’s report covers a period from May, 1978 to February, 1979.
Petitioner alleges that representatives of defendant promised to make good any shortage which might occur under the key-stop arrangement. The record establishes that representatives of defendant asserted that defendant would make up all short-’ ages resulting from the fault of defendant’s employees.
Testimony establishes that petitioner’s bookkeeping procedures were not in accordance with regular accounting procedures. Petitioner had no daily or weekly reconciliations between its physical inventory and the amount shown on its records to have been bought and sold. This reconciliation was not performed until the end of 1978 or in early January of 1979. Although petitioner took monthly inventories, it did not reconcile its books on a monthly basis. Although petitioner measured the amount of petroleum product in its tanks on a daily method, these readings were only used to see if more gas was needed and then discarded. Petitioner had no internal accounting controls.
The record establishes that petitioner must have issued approximately 10,000 sales invoices covering products sold by it from January, 1978 through January, 1979. Petitioner relies on these invoices to establish the amount of petroleum products sold in order to arrive at the shortage. However, 413 of these sales tickets are missing. One of petitioner’s employees testified that she attempted to pull from the sales tickets introduced into evidence all tickets covering products other than gas. This testimony was offered to explain why some sales invoices were missing. However, this Court notices that over 500 sales tickets which did not reflect sales of fuel were in the sales invoices actually introduced in evidence. This Court is not satisfied that all of the sales tickets reflecting the sale of fuel are accounted for. This Court finds that a large number of these sales tickets are missing.
Several different drivers delivered this petroleum to petitioner. Lengthy testimony was presented concerning the procedures used by defendant in receiving petroleum from the refinery and dropping it into petitioner’s tanks. This Court can not find that the procedure used by defendant in receiving and delivering this petroleum was faulty.
In light of these missing sales tickets, this Court is not satisfied that petitioner has shown its loss. In addition, the record establishes that any petroleum actually lost could as easily have been stolen after delivery of these products to petitioner as before delivery. Petitioner had no internal accounting controls. Its bookkeeping procedures were so poor that this Court could not determine the cause of the alleged petroleum loss. Accordingly, this Court finds that the circumstantial evidence offered by petitioner fails to carry the burden of proof imposed upon it.
The expert fee of Walter Adams, CPA, is set at $300 and taxed as court costs. Court costs are to be paid by petitioner.
This Court will sign a judgment in accordance with these reasons when one is presented to it.
*354 Franklinton, Louisiana this 17th day of January, 1983.
/s/ John W. Greene
JOHN W. GREENE, Judge
Division “D”